**Marie DeMONACO, Plaintiff,**

v.

**George MASTELLONE, M.D.,**
**Defendant.**

**No. 83 Civ. 2739.**

United States District Court,
E.D. New York.

March 14, 1986.

---

Henry R. Simon, of counsel, New York City, for plaintiff.

Garbarini, Scher & DiCicco, P.C., New York City, for defendant: Myrna A. Levinson, Michael I. Josephs, of counsel.

## MEMORANDUM–DECISION and ORDER

BARTELS, District Judge.

In this medical malpractice action, the plaintiff, Marie DeMonaco, moves for judgment n.o.v., or in the alternative for a new trial, pursuant to Fed.R.Civ.P. 50(b). The plaintiff charged that in 1981, the defendant, Dr. George Mastellone, who had been her obstetrician/gynecologist for approximately 20 years, was negligent in that he failed to properly and timely diagnose and treat her pelvic inflammatory disease caused by actinomycosis. As a result of defendant's negligence, plaintiff alleged, she was forced to undergo a complete hysterectomy when her condition was finally discovered.

The case was tried before a jury which returned a verdict for the defendant on January 22, 1986. In response to special interrogatories, the jury found that the defendant had been negligent, but that such negligence did not cause the plaintiff's injuries.* Plaintiff here asserts that, given the finding of negligence, the jury's conclusion that such negligence did not cause plaintiff's injuries is unsupported by the evidence.

The standards for granting a judgment n.o.v. are well recognized. As the Second Circuit Court of Appeals stated,

---

* In an unusual move, the jury requested the court to read a statement that "Although we generally feel the Doctor was somewhat negligent, we do not feel the operation was avoidable," which statement the court read to the parties. It is clear that "somewhat negligent" must be equated to unqualified negligence.

the trial court cannot assess the weight of conflicting evidence, pass on the credibility of the witnesses, or substitute its judgment for that of the jury. Rather, after viewing the evidence in a light most favorable to the non-moving party (giving the non-movant the benefit of all reasonable inferences), the trial court should grant judgment n.o.v. only when (1) there is such a complete absence of evidence supporting the verdict that the jury's findings could only have been the result of sheer surmise and conjecture, or (2) there is such an overwhelming amount of evidence in favor of the movant that reasonable and fair minded men could not arrive at a verdict against him. *Mattivi v. South African Marine Corp., "Huguenot"*, 618 F.2d 163, 167–168 (2d Cir. 1980); *Aaron Ferer & Sons, Ltd. v. Chase Manhattan Bank*, 731 F.2d 112, 121–122 (2d Cir.1984). Plaintiff cannot meet this standard here.

The events in this case were not seriously disputed. In February 1977, Dr. Mastellone inserted an intrauterine device (IUD) into Mrs. DeMonaco during an office visit. Thereafter, plaintiff visited Dr. Mastellone at his office in October 1980, and then several more times in 1981—first on March 30, and also on June 10 and August 19—presenting various complaints and symptoms. On these visits, Dr. Mastellone examined her and ordered certain tests from which he eventually concluded that she suffered a benign growth of the uterus. Dr. Mastellone removed the IUD on the March 30 visit, and at the August 19 visit, told Mrs. DeMonaco to check back with him in a few months.

In the meantime, between March and December 1981, Mrs. DeMonaco saw several other doctors, who were not obstetrician/gynecologists, who examined her and performed tests to determine the cause of her complaints. Finally, on December 8, 1981, she visited Dr. Bohm in New Jersey, a gastroenterologist, who, upon his examination and tests, found a large mass in her uterus, unnoticed by previous doctors. He recommended that she contact her gynecologist immediately and be hospitalized. Accordingly, plaintiff saw Dr. Mastellone the next day, December 9, who examined her and recommended immediate surgery. Mrs. DeMonaco underwent surgery on December 23, 1981, during which her uterus, tubes, ovaries and appendix were removed. Post-operative tests revealed that the plaintiff had been suffering for some time from chronic pelvic inflammatory disease with bilateral tube abcesses due primarily to actinomycosis.

The real issue for resolution by the jury was the conflicting testimony of the parties' respective expert medical witnesses concerning whether, under accepted standards of medical care in the community, (1) the symptoms and complaints presented by the plaintiff to the defendant on her various visits should have led him to suspect the presence of pelvic inflammatory disease as early as March 30, 1981, to perform certain tests to confirm its presence, and thereafter to treat her for the condition; and (2) whether the plaintiff would nevertheless have had to undergo the same surgery even if her pelvic inflammatory disease had been discovered earlier.

Plaintiff's expert, Dr. Altchek, relying heavily on his own 'authoritative article', published in Pediatric Clinics of North America, Vol. 28, No. 2, May 1981 (Tr. Jan. 15 at 63), opined that the plaintiff had presented clear signs of pelvic inflammatory disease as early as the March 30, 1981 visit, as well as on subsequent visits to Dr. Mastellone (*id.* at 115–116, 124, 125), and that had the defendant diagnosed it at that time, the condition could have been treated with antibiotics and the hysterectomy could have been avoided. (*Id.* at 119, 126). On the other hand, defendant's expert, Dr. Troisi, stated that, in view of the rarity and insidious character of pelvic inflammatory disease caused by actinomycosis, which is not easily discoverable (Tr. Jan. 16 at 126–128, 154), Dr. Mastellone had no reason to suspect plaintiff's pelvic inflammatory disease, even as late as the August 19, 1981 visit (*id.* at 114, 118, 129–130), particularly since plaintiff did not exhibit the clear pro-

gression of worsening symptoms associated with more usual forms of pelvic inflammatory disease. (*Id.* at 130). Dr. Troisi also testified that due to the nature of actinomycosis, the same surgical treatment would have been necessary even had plaintiff's condition been uncovered by Dr. Mastellone earlier. (Tr. Jan. 21 at 171–174, 178, 179).

In view of the jury's answers to the interrogatories, they obviously chose to believe defendant's expert over plaintiff's expert, *see Manning v. New York Telephone Co.*, 388 F.2d 910, 912 (2d Cir.1968), and, after reviewing the record, the Court cannot find that there was "a complete absence of evidence" supporting the verdict or "an overwhelming amount of evidence" in favor of the plaintiff justifying a judgment n.o.v. At the hearing on this motion, plaintiff urged that the jury, in deciding that she would have had to undergo the surgery despite defendant's negligence, had ignored testimony by defendant's own expert, Dr. Troisi, that had the pelvic inflammatory disease been discovered in March, Mrs. DeMonaco would not have had to undergo the *same* surgery she underwent in December. Thus, plaintiff argued, she was entitled to damages for the presumeably more extensive surgery required due to the delayed diagnosis.

■ In the testimony relied on by plaintiff, Dr. Troisi stated on direct examination,

The question that you asked, if she had been entered into in March would she have the operation, the same operation in March, probably not but she probably would have returned in December with the same abcess.

Q: In other words the outcome, the hysterectomy, the total hysterectomy was inevitable?

A: That's my feeling, yes.

(Tr. Jan. 21 at 179). Plaintiff's reliance on this testimony to support a judgment n.o.v. is insufficient for two reasons. First, as Dr. Troisi testified immediately prior to the above quoted testimony, even if there was intervention in the early stages of actinomycosis, such intervention would not necessarily prevent the disease from progressing unnoticed and from eventually requiring the full surgical treatment received by the plaintiff in December 1981. (*Id.* at 178–179). This opinion was supported by the evidence in the case, which the jury could believe, that Mrs. DeMonaco's pelvic inflammatory disease did in fact go unnoticed by several other doctors, and that even as late as November 5, 1981, when Mrs. DeMonaco saw Dr. Haas, a gastroenterologist, she was not exhibiting the severe symptoms discovered by Dr. Bohm in December. (*See* Tr. Jan. 16 at 140–142). Thus, the jury properly could conclude that even had Dr. Mastellone discovered and treated Mrs. DeMonaco's pelvic inflammatory disease in March, the actinomycosis nevertheless would have continued to progress unnoticed and later require the same treatment she received in December 1981.

■ The second shortcoming of plaintiff's argument is that plaintiff has assumed that the jury found Dr. Mastellone was negligent as early as March 30, 1981, rather than sometime thereafter on one of the subsequent visits at which plaintiff claimed the defendant was negligent. The jury's verdict, however, did not indicate at what point in time the defendant was negligent in the course of his treatment of the plaintiff. Consistent with the credible evidence, the jury could have found that defendant's failure to take appropriate action did not occur until after plaintiff's pelvic inflammatory disease had reached a point where the same surgery and treatment was in any event inevitable. For example, the jury could have found the defendant was not negligent until on or after the June 1981 visit, at which time, Dr. Troisi testified, plaintiff "would have had the same treatment." (Tr. Jan. 21 at 178).

Plaintiff also argues that the jury did not understand that plaintiff was claiming damages not only for the surgery she underwent in December, but also for her pain and suffering during the period from the time Dr. Mastellone should have discovered the disease until it was finally discovered

and treated. However, the evidence was equivocal as to whether the plaintiff suffered worsening symptoms of pain up until she visited Dr. Bohm in December. Thus, for example, plaintiff did not exhibit the acute pain and tenderness or other symptomology normally associated with pelvic inflammatory disease, either on the June (Tr. Jan. 13 at 66; Tr. Jan. 16 at 122–124) or the August (Tr. Jan. 13 at 71; Tr. Jan. 16 at 129–130) visits to Dr. Mastellone, nor any significant change in her condition in the time between those visits. (Tr. Jan. 13 at 72–73; Tr. Jan. 16 at 130). In September, Dr. Paulin, an internist, was able to note, after plaintiff's visit to him, that the plaintiff felt better (Tr. Jan. 16 at 130), and, as defendant's expert pointed out, even after Dr. Bohm's diagnosis on December 8, plaintiff's condition was such that she did not require hospitalization until December 17. (Tr. Jan. 21 at 262).

Such evidence was consistent with the statement in the medical literature cited by plaintiff that actinomycosis frequently may be clinically mute (*see* Tr. Jan. 21 at 267), and Dr. Altchek's testimony that he could not say when plaintiff's abcesses actually formed. (Tr. Jan. 15 at 214). It is also consistent with Dr. Troisi's testimony that actinomycosis may be present without symptoms for a long time before serious symptoms, such as an abcess, form. (Tr. Jan. 16 at 126–128, 154). Under the circumstances, the jury was entitled to find that any pain and suffering the plaintiff may have experienced up until her surgery, was inevitable and not caused by defendant's negligence.

The Court must also deny plaintiff's motion for a new trial on grounds that the verdict is against the weight of the evidence. The decision to grant a new trial is addressed to the sound discretion of the trial court. *See* 6A *Moore's Federal Practice,* ¶ 59.08[5] at 59–140 (1985). Nothing in the Court's review of the record has shown that plaintiff's case was more credible than defendant's, particularly with regard to the opinions of the medical experts, as to require a new trial. *See Bevevino v.*

*Saydjari,* 574 F.2d 676, 683–687 (2d Cir. 1978). Accordingly, plaintiff's motion is denied.

SO ORDERED.